## BASTIAN *v.* CHAMP.

PATENTS; INTERFERENCE; DISCLOSURE; REDUCTION TO PRACTICE; "TWO PART MEANS."

1. Where the junior party to an interference involving an improvement in bottle-filling machines conceived and disclosed the invention in August, 1902, but did not reduce to practice until January, 1905, which was three months subsequent to the senior party's filing date, and it appeared that between the time of his conception and disclosure and the date his adversary entered the field he was building similar machines for another party, and had agreed with him not to build any machines embodying the invention of the issue so long as he could get his work, he is so lacking in diligence as not to be entitled to an award of priority.

2. The expression "two-part means," called for by certain counts of the issue in an interference relating to bottle-filling machines containing fluid-actuated means for lifting the bottle into a filling position, *held* to be descriptive of two means, one or both of which in turn might include one or several parts.

No. 601. Patent Appeals. Submitted November 18, 1909. Decided December 14, 1909.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The facts are stated in the opinion.

*Mr. William O. Belt, Mr. Charles C. Linthicum, Mr. L. S. Bacon,* and *Mr. J. H. Milans* for the appellant.

*Mr. Jesse B. Fay* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal by Charles L. Bastian from the decision of the Commissioner of Patents in an interference proceeding affirming the decision of the Board of Examiners-in-Chief, which, in turn, affirmed the decision of the Examiner of Interferences, awarding priority of invention to appellee, Joseph H. Champ. The issue relates to bottle-filling machines containing fluid-actuated means for lifting the bottles into filling position, and is embodied in the following counts:

"1. In a bottle-filling machine, the combination of a rotatable upright shaft, a tank carried by said shaft, a series of bottle-filling valves connected to said tank, a series of fluid pressure bottle lifts carried by said shaft, and means for automatically operating said bottle lifts by said fluid pressure during the rotation of the shaft.

"2. In a bottle-filling machine, the combination of a bottle mouth piece, a bottle rest, fluid-actuated means for moving said bottle rest relatively to said mouth piece, said members having conjoint travel distinct from said bottle rest movement, two-part means, one part traveling and the other not traveling with said distinct travel and automatically co-operative during same to control flow of fluid for said fluid-actuated means, substantially as set forth.

"3. In a bottle-filling machine, the combination of a bottle mouth piece, a bottle rest, piston means for moving said bottle rest toward said mouth piece, said members having conjoint travel distinct from said bottle rest movement, two-part means, one part sharing and the other part not sharing in said conjoint travel and controlling flow of liquid to move said bottle rest toward said mouth piece, substantially as set forth."

Appellee filed his application October 4, 1904, while the

application of appellant, Charles L. Bastian, was not filed until February 13, 1905. It will therefore be seen that appellant comes here, not alone with the burden of the unanimous decisions of the three tribunals of the Patent Office against him, but also with the burden of proof resting upon him as the junior party to this interference.

Appellee has offered some evidence to prove that he disclosed the invention in issue as early as the spring of 1902, but we think this date is not sufficiently established. It, however, appears that appellee instructed one Smith to make drawings of the device, which were completed and dated on September 10, 1902. Smith identified the drawings as having been completed by him on the date marked thereon. Appellee then instructed Smith to proceed to embody this invention in a working machine, which was done, and the device satisfactorily tested prior to November 17, 1902, which date is fixed by means of a memorandum signed by appellee and Smith, and by the testimony of Smith and one Steinmetz. Regarding this machine, the Commissioner said: "Thereafter, under Champ's instructions, a machine was completed, and this machine, which is referred to in the record as Machine No. 1, was tested not later than November 17, 1902. It was subsequently dismantled, and parts of it used in making another machine, which is referred to as machine No. 2. Machine No. 2 was completed about the first part of the year 1903. A part of the No. 1 machine has been introduced in evidence, and is known as 'one unit of first machine.' This exhibit does not embody all the elements in issue, but, taken in connection with drawings which are proved to have been made prior to the building of the machine, and the testimony of Champ, Smith, and Steinmetz, it clearly establishes a conception of the invention by Champ as early as November, 1902." We see no reason to disturb this conclusion.

Appellant claims conception and disclosure of the invention in August, 1902. For the purposes of this inquiry, we may concede him that date, although the evidence is far from being conclusive on this point. The earliest date alleged for reduction to practice is January 1, 1905, three months subse-

quent to appellee's filing date. Therefore, even granting that he is the first to conceive, he is the last to reduce to practice; and it is incumbent upon him to show that he was exercising due diligence in perfecting his invention from a time just prior to the date appellee entered the field until he reduced his own invention to practice. This he has not done. On the contrary, between August, 1902, and October, 1904, when he ordered the preparation of scale drawings of the invention, he was doing nothing toward perfecting his device. During this time he was engaged in building machines with a cam lift for one Strasburger, a witness for appellant; and it further appears from the testimony of this witness that appellant had agreed not to build any machines embodying the invention in issue as long as he could get witness's work. It is manifest that an inventor cannot stand idly by, awaiting his business convenience, and then satisfactorily answer the charge of lack of diligence.

Counsel for appellant contend that appellee's structure does not contain the "two-part means" called for by counts 2 and 3 of the issue, and that, therefore, no interference in fact exists as to these two counts. This contention is well answered in the opinion of the Examiners-in-Chief, as follows: "There is nothing in the expression 'two-part means' that necessarily confines them to two parts, each part being a single part; on the contrary, the term 'two-part means' is descriptive of two means, one or both of which in turn may include one or several parts; in short, the expression may relate to two grand or main divisions of means, each of which divisions, for aught that the language of the counts says to the contrary, may in turn be composed of any number of parts. We agree with the reasoning of the Examiner of Interferences as to the matter that the valve and lever in Champ's disclosure may be properly termed one 'means' and the bar and rollers a second 'means,' and the two together be designated as a 'two-part means.'" With this conclusion we fully agree.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required.                                        *Affirmed.*